FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   APR 27 2020   ★

LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
BRUCE L. HICKS, JR.,

                          Plaintiff,                          **MEMORANDUM OF**
                                                              **DECISION & ORDER**
              -against-                                       2:18-cv-1508 (ADS)

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                          Defendant.
-------------------------------------------------------X
**APPEARANCES:**

**Algeria & Barovick LLP**
*Attorneys for the Plaintiff*
235 Main Street, Suite 318
White Plains, NY 10601
          By:     Andrew J. Barovick, Esq., Of Counsel.

**United States Attorneys Office, Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
          By:     Mary M. Dickman, Esq., Assistant United States Attorney.

**SPATT, District Judge:**

On March 12, 2018, the Plaintiff Bruce L. Hicks (the "Plaintiff" or the "Claimant")

commenced this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"),

challenging a final determination by the Defendant, Nancy A. Berryhill, the then Acting

Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner"),

that she was ineligible to receive Supplemental Security Income ("SSI") benefits.

Andrew M. Saul is now the Commissioner of the Social Security Administration.

Pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P.") 25(d), Saul is hereby

substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this action. *See,*

1

*e.g.*, *Pelaez v. Berryhill*, No. 12-CV-7796, 2017 WL 6389162 (S.D.N.Y. Dec. 14, 2017), *adopted by*, 2018 WL 318478 (S.D.N.Y. Jan. 3, 2018).

Presently before the Court are the parties' cross motions, pursuant to FED. R. CIV. P. 12(c) for a judgment on the pleadings. For the reasons that follow, the Court denies Plaintiff's motion, grants the Defendant's cross-motion, and closes the case.

## I.   BACKGROUND

On October 28, 2014, the Plaintiff, then age 38, applied for SSI benefits under §§ 216(i) and 223 of the Act. The Plaintiff alleged that he was a former landscaper with a high school diploma, and that he had been disabled since May 25, 2000 because of a motorcycle accident. He further alleged that this accident caused him the following maladies: (1) chronic, severe pain and limitation of movement throughout his left leg, starting at the hip, extending through the tibia-fibula area and going down to the ankle and foot; (2) diabetic neuropathic pain in in both feet; (3) foot drop in his left foot; and (4) lumbar radiculopathy stemming from a left L5/S1 paracentral disc extrusion. He also claimed to suffer from several psychological impairments: (1) panic disorder; (2) agoraphobia; (3) anxiety related disorders; and (4) difficulty maintaining concentration, persistence, or pace.

His claim was denied on December 18, 2014, and he requested a hearing. The Plaintiff appeared with counsel before Administrative Law Judge Alan B. Berkowitz (the "ALJ") on February 22, 2017. On March 23, 2017, the ALJ issued a written decision in which he found that the Plaintiff was not disabled under the Act as of October 28, 2014, the date he applied for SSI benefits.

The Plaintiff sought a review by the Appeals Council, and on January 9, 2018, the Appeals Counsel ruled that it would not further review the ALJ's decision. The ALJ's decision

2

became the final decision of the Commissioner upon the Appeals Council's denial of the Plaintiff's request for review.

On March 12, 2018, the Plaintiff filed the present action. On June 19, 2019, the parties submitted the Plaintiff's Rule 12(c) motion and the Defendant's Rule 12(c) cross-motion as fully briefed to the Court.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges and responses presently raised by the Plaintiff and the Defendant. In this regard, references to the record are denoted as "R."

## II.   DISCUSSION

Briefly, the parties have presented three issues for the Court, whether: (1) whether the ALJ violated the treating physician rule in not assigning controlling weight to the testimony of the Plaintiff's treating physician, Dr. Matthew Shatzer ("Shatzer"); (2) the evidence supported the ALJ's findings as to the Plaintiff's residual functional capacity ("RFC"); and (3) the ALJ erred in his ruling that the Plaintiff was not credible. The Court holds that the substantial evidence supported the ALJ's ruling as to all three issues.. In addition, the Court holds that the ALJ's disability ruling is supported by substantial evidence. Accordingly, the Court denies the Plaintiff's Rule 12(c) motion, grants the Defendant's Rule 12(c) cross-motion, and dismisses the case.

## A. The Standard for Benefits Under the Act

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person may only be disabled if his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the Commissioner is required to apply the five-step sequential process promulgated by the Social Security Administration, set forth in 20 C.F.R. § 404.1520. *See Rosa v Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Plaintiff bears the burden of proving the first four steps, but then the burden shifts to the Commissioner at the fifth step to prove that the Plaintiff is capable of working. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *Rosa*, 168 F.3d at 77. *See also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."). "If at any step a finding of disability or non-disability can be made, the [Social Security Administration] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 379, 157 L. Ed. 2d 333 (2003).

Under the five-step sequential evaluation process, the decision-maker decides:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity'

4

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); 20 C.F.R. §§ 404.1520, 416.920.   When conducting this analysis, the ALJ must consider the objective medical facts; the diagnoses or medical opinions based on these facts; the subjective evidence of pain and disability; as well as the plaintiff's age, background, education and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

## B.   The Standard of Review

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, *J.*) (citing *Bubnis v. Apfel*, 150 F.3d 177, 179–71 (2d Cir. 1998)); *accord Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); 42 U.S.C. § 405(g).   *See also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").   The ALJ is required to set forth those crucial factors used to justify his or her findings with sufficient particularity to allow the district court to make a determination regarding the existence of substantial evidence.   *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Accordingly, "the reviewing court does not decide the case *de novo*." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir.

2004)). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.* (citing 42 U.S.C. § 405(g)), and therefore, the relevant question is not "whether there is substantial evidence supporting the [plaintiff's] view;" instead, the Court "must decide whether substantial evidence supports *the ALJ's decision*," *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (Summary Order) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would *have to conclude otherwise.*'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to "inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-CV-502, 2002 WL 31487903, at *7 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess v. Astrue*, 537 F.3d 117, 127–28 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31); *accord Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L. Ed. 456 (1951)).

An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits

[the Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (per curiam) (quoting *Mongeur*, 722 F.2d at 1040). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).

## C. The Rule 12(c) Standard

Both parties filed Rule 12(c) motions. ECF 14, 23. Such motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). "To survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Hayden v. Peterson*, 594 F.3d 150, 160 (2d Cir. 2010). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). "'Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009)).

## D. Application to the Facts of This Case

In his Rule 12(c) motion, the Plaintiff asks for an order that reverses the Commissioner's decision that he was not disabled; directs the Commissioner to find the Plaintiff disabled and entitled to a retroactive period of disability. ECF 14 at 20. In the alternative, he asks that the

Court remand his claim for a new administrative hearing and to award him attorney fees pursuant to the Equal Justice Act, 28 U.S.C.A. § 2412(d). *Id.* He raises three arguments in support.

First, he contends that the ALJ violated the treating physician rule when he did not assign controlling weight to Shatzer's testimony, and instead granted it little weight, despite there being no substantial evidence to contradict that testimony. *Id.* at 18. Second, the Plaintiff asserts that the ALJ's RFC findings were not supported by substantial evidence. *Id.* at 18–19. In particular, he alleges that the ALJ failed to sufficiently explain his reasoning for his RFC ruling. *Id.* Third, he argues that the ALJ erred in finding that he was not credible. *Id.* at 19–20.

In its Rule 12(c) cross-motion, the Defendant asks the Court to dismiss the action. ECF 23-1. The Defendant argues that substantial evidence supports the ALJ's decision, including the choice to accord less than controlling weight to Shatzer's opinion. *Id.* at 20–24. The Defendant also asserts that substantial evidence supported the ALJ's RFC determination, and that the ALJ properly assessed the Plaintiff's subjective comments on his condition. *Id.* at 24–25. The Court addresses each of these arguments in turn.

### 1. As to Whether the ALJ Violated the Treating Physician Rule

Under the treating physician rule, the opinion of a claimant's treating physician as to the nature and severity of the claimant's impairments is given "controlling weight" so long as it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Green-Younger v. Barnhart,* 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); *Bonneau v. Astrue,* No. 5:13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014) (same).

Although the Court is generally required to defer to the medical opinion of a treating physician, *see Schisler v. Sullivan,* 3 F.3d 563, 567–68 (2d Cir. 1993), those findings may not be

8

accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts, *Burgess*, 537 F.3d at 128.  The ALJ must consider the following factors if it decides to afford less than controlling weight to the treating physician's opinion: "(1) the frequen[c]y, length, nature, and extent of [the] treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

In order for the Court to determine whether a treating physician's opinion is consistent with other substantial evidence in the administrative record, the Court must keep in mind that "genuine conflicts in the medical evidence are for the ALJ to resolve." *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (summary order); *see also Garcia v. Barnhart*, No. 01-Civ.-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003) (holding that the ALJ cannot substitute his or her "own assessment of the relative merits of the objective evidence and subjective complaints for that of a treating physician").

Here, the ALJ discussed Shatzer's opinions when ruling that the Plaintiff had an RFC to perform sedentary work, in that he could sit for six hours and stand or walk for two hours in an eight hour workday, with normal breaks; lift or carry ten pounds occasionally; sit for 30 minutes at a time; and occasionally bend, stoop, crouch, crawl, kneel, squat, and climb. R. at 15–19. The ALJ noted that Shatzer had treated the Plaintiff for chronic pain since 2015; that in March 2015, Shatzer believed that the Plaintiff could not sit continuously and needed to get up and move every ten minutes; that Shatzer also believed the Plaintiff had limitations in repetitive reaching, handing, fingering, and lifting. *Id.* at 17.  The ALJ noted that Shatzer "inconsistently indicated that the claimant had minimal to no limitation in grasping, twisting, fine manipulation and

reaching." *Id.* at 18. The ALJ also said that Shatzer's opinion was inconsistent with the Plaintiff's testimony, based on the Plaintiff's testifying that he had no issues with his arms or hands. *Id.* The ALJ further said that the Plaintiff's "limited recent treatment record" did not support his medical opinion, and that the Plaintiff's motorcycle accident had occurred more than sixteen years prior. *Id.* The ALJ thus gave the opinion "little weight." *Id.*

The ALJ found support for his RFC determination from three sources. The first was from the Plaintiff's immediate care following the 2000 motorcycle accident: (1) the accident left him with left posterior hip dislocation; and (2) the Plaintiff had a series of operations on that hip. R at 15–16. The second source was the Plaintiff's follow-up care with an orthopedist. That care took place approximately one year after the accident, and the Plaintiff displayed "some limitations in the left hip and knee range of motion with diminished sensation." R. at 16. The Plaintiff's treatment plan included "full weight bearing, a prescription for a foot drop splint, Vicodin and return in six months." *Id.*

The ALJ noted that the ALJ did not seek treatment for nearly a decade, leading to the third source, his treatment at Glen Cove Hospital. *Id.* From 2011–12, the Plaintiff received treatment for illicit drug use, and management of type II diabetes. *Id.* At the time, the Plaintiff "reported that he keeps active as possible every day with walking, despite leg pain." *Id.* In 2014, the Plaintiff received Toradol after visiting the hospital with complaints of back and leg pain. *Id.* at 17. Finally, in 2016, the Plaintiff received Percocet, Valium, and Toradol from the hospital after complaining once again of back and leg pain. *Id.* at 18.

The Court agrees with the Defendant that substantial evidence supports the ALJ's findings, and, that the ALJ did not violate the treating physician rule. The evidence in the record does not support the extent to which Shatzer claimed the Plaintiff to be limited in his RFC.

10

Shatzer's opinion portrayed the Plaintiff as being in a more dire condition than that of the Plaintiff's treatment history and the Plaintiff's own testimony as noted above.

In addition, Shatzer's opinion conflicted with those of two of the Plaintiff's consultative physicians, which can constitute substantial evidence supporting an ALJ's conclusions. *See Nelson v. Colvin*, No. 16-Civ.-3530, 2017 WL 1397547, at *11 (S.D.N.Y. Apr. 14, 2017); *Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015). Here, two consultative examiners, Doctors Charlene Andrews-Watson and Lali Levi, performed internal examinations of the Plaintiff and found more moderate limitations with regard to the Plaintiff's range of motion and strength in his lower body. R. at 18–19; 418–22; 499–505. Thus, the ALJ had support in the record for his ruling that Shatzer's opinion conflicted with the results of the Plaintiffs consultative examiners, which further supports a ruling that substantial evidence supported his decision. *See DiNapoli v. Comm'r of Soc. Sec.*, No. 14-Civ.-3652, 2016 WL 1245002, at *11 (E.D.N.Y. Mar. 24, 2016) ("Based on the lack of support for Dr. Peselow's conclusions in the treatments notes and the Department of Sanitation forms he completed, the conflicting findings of [consulting physician] Dr. Lancer, and the plaintiff's own statements regarding his capacities, I find that the ALJ had good reasons for affording Dr. Peselow's opinion less than controlling weight.") (internal quotation marks and brackets omitted); *Suarez v. Colvin*, 102 F. Supp.3d 552, 574–78 (S.D.N.Y 2015).

In addition, the ALJ did not entirely disregard Shatzer's opinion. The Court observes that the ALJ did in fact agree with the portion of Shatzer's opinion that the Plaintiff can occasionally lift and carry ten pounds. *See, e.g., Franco v. Berryhill*, No. 17-cv-7548, 2019 WL 6211275, at *6 (E.D.N.Y. Nov. 21, 2019) (Spatt, *J.*) ("In any event, as ALJ Wexler noted in her decision, she did take Dr. Chernoff's opinion into consideration by imposing limitations on how long the

11

Plaintiff could be expected to sit."). Accordingly, the Court holds that the ALJ did not violate the treating physician rule.

### 2. As to Whether Substantial Evidence Supported the ALJ's RFC Finding

For the same reasons as listed above, the Court rules that substantial evidence supports the ALJ's findings as to the Plaintiff's RFC. The ALJ correctly ruled on the Plaintiff's RFC based on a combination of granting limited weight to Shatzer's opinion; assessing the totality of the Plaintiff's medical record; and considering the opinions of the Plaintiff's consultative physicians. *See, e.g., Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7–8 (2d Cir. 2017) (summary order) ("Here, the administrative record demonstrates that the ALJ's decision not to give controlling weight to Dr. Wolkoff's opinion under the 'treating physician' rule was proper considering the substantial evidence contradicting Dr. Wolkoff's assessment.").

The Court also holds that the ALJ adequately explained his RFC ruling. Courts in this Circuit have remanded social security appeals on the basis of failing to explain an RFC ruling when an ALJ did not expand on why a treating physician's opinion was unpersuasive, *Bolden v Commissioner of Social Security*, 556 F. Supp. 2d 152, 164 (E.D.N.Y. 2007); failed to note the weight assigned to various medical source statements, *Forbes ex rel. Forbes v. Astrue*, No. 08-CV-1991, 2010 WL 1529273, at *3 (E.D.N.Y. Apr. 15, 2010); or did not elaborate on its evaluation of the evidence in the record, *Todman v. Astrue*, No. 07-Civ.-10473, 2009 WL 874222, at *1 (S.D.N.Y. Mar. 30, 2009).

In this case, the Plaintiff appears to be making a *Todman* argument in asserting that the ALJ "failed to explain his basis" for ruling that "the opinions of plaintiff's physicians were not supported in the records." ECF 14 at 18. However, the Court finds no such failure of the ALJ to explain his rationale. The ALJ spent numerous pages in his decision outlining exactly how

12

Shatzer's allegations conflicted with the rest of the evidence in the record, namely, Shatzer's inconsistent findings, the long gaps in the Plaintiff's treatment history, and the Plaintiff's visits with the consultative physicians. R at 15–20.

The ALJ also dedicated a portion of his opinion to describing the two consultative physicians who made an internal examination of the Plaintiff, Andrews-Watson and Levi,, which shows that the two reports were in harmony with one another. *Id.* at 18–19. Regarding the Andrews-Watson examination, the ALJ said that "the claimant had moderate limitations for prolonged sitting and moderate to marked limitations for prolonged standing, walking, climbing, pushing, pulling, lifting, and carrying heavy objects." *Id.* at 18. The ALJ summarized the Levi examination by saying that the Plaintiff displayed a decreased range of motion of the hips, knee, and ankle, that the Plaintiff had no sensory deficits and full muscle strength in his lower extremities, and that the Plaintiff had marked limitations for standing, walking, squatting, or kneeling. *Id.* at 18–19. The ALJ further noted as to both consultative physicians that their opinions were "generally consistent" with the limitations in the Plaintiff's hip range of motion from the Plaintiff's treatment records. *Id.*

Accordingly, the Court rules that the ALJ adequately explained his RFC finding, which showed the Plaintiff as being limited by his condition but not to the extent alleged by Shatzer.

### 3. As to the ALJ's Ruling on the Plaintiff's Credibility

Finally, the Court holds that substantial evidence supports the ALJ's credibility determination concerning the Plaintiff. In General, it is the ALJ's function, and not the reviewing Court, "'to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 113 (2d Cir. 2010) (summary order) (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d

Cir. 1983)). An ALJ properly deems a plaintiff to be not credible when he finds inconsistences between the plaintiff's testimony and the medical evidence in the record or the plaintiff's statements of daily living. *Matthew v. Colvin*, No. 13-CV-5336, 2015 WL 5098662, at *8 (E.D.N.Y. Aug. 31, 2015); *see also Burnette v. Colvin*, 564 F. App'x 605, 609 (2d Cir. 2014) (summary order); *Donnelly v. Colvin*, No. 13-Civ.-7244, 2015 WL 1499227, at *15 (S.D.N.Y. Mar. 31, 2015).

Here, the ALJ ruled that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. at 19. The ALJ cited numerous examples of the Plaintiff's daily living that were inconsistent with a claim of total disability: that the Plaintiff lived alone; that he bathed and dressed independently; shopped for food and did laundry. *Id.* at 19–20. These "routine activities" evince substantial evidence of the Plaintiff's not being credible. *See Lamorey v. Barnhart*, 158 F. App'x 361, 363–64 (2d Cir. 2006) (summary order) ("[W]e nevertheless agree with [the ALJ's] conclusion that the record contains substantial evidence of routine activities by Lamorey inconsistent with her claimed total disability.").

The ALJ also compared the Plaintiff's testimony to two of his 2012 consultative exams, which "indicated that he shops, as well as takes care of other activities of daily living." R. at 19, 413–22 (noting the Plaintiff's ability to socialize, maintain his household, go shopping, and cook). Thus, the ALJ also found the Plaintiff's statements alleging a total disability to be inconsistent with the evidence in the record. *See Burnette*, 564 F. App'x at 609 ("[T]he ALJ acted well within his discretion in concluding that [plaintiff] was less than credible where [the] ALJ found inconsistencies between [plaintiff's] statements and the evidence.") (internal quotation marks omitted); *see also Donnelly*, 2015 WL 1499227, at *6 (observing that the ALJ

14

noted that the record showed the Plaintiff's having moderate restrictions in her social functioning).

Accordingly, substantial evidence supports the ALJ's determination on the Plaintiff's credibility.

## III.   CONCLUSION

For the foregoing reasons, the Court denies the Plaintiff's Rule 12(c) motion, grants the Defendant's Rule 12(c) cross-motion, and dismisses the complaint.

The Clerk of Court is respectfully directed to close the case.


It is **SO ORDERED.**


/s/Arthur D. Spatt

Arthur D. Spatt, U.S.D.J.                    April 27, 2020

                                             Date